NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHPRESA LEKA,<br><br>          Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>          Defendant. | Civil Action No.: 2:13-cv-06408 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

## I.     INTRODUCTION

Shpresa Leka ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed.

## II.    BACKGROUND

### A.     Procedural History

Plaintiff applied for disability insurance benefits ("DIB" or "Benefits") under Title II from

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

the Social Security Administration ("SSA") on October 10, 2007, alleging disability beginning on August 5, 2007. (R. 99.) The application was initially denied on February 29, 2008 (R. 117-121), and denied on reconsideration on July 8, 2008. (R. 123-125.) Plaintiff requested a hearing before an ALJ on July 11, 2008. (R. 126.) An initial hearing was held before ALJ John O'Leary on September 30, 2009. (R. 40-59.) Subsequently, the case was reassigned to ALJ Donna Krappa and a supplemental hearing was held on March 18, 2010. (R. 60-84.) In a written opinion dated April 19, 2010, the ALJ determined that Plaintiff was not disabled. (R. 28-39.)

On June 4, 2010, Plaintiff filed a subsequent claim under Title II of the Social Security Act, and the Disability Determination Services found that Plaintiff was under disability commencing April 21, 2010. (R. 103.) On review of the ALJ's April 19, 2010 opinion and the Disability Determination Services' determination, the Appeals Council remanded the case to an ALJ on February 11, 2011. (R. 106-110.) Plaintiff appeared for a hearing before the ALJ on November 30, 2011. (R. 186-191.) However, after reviewing the Appeals Council remand order, the ALJ reported to the representative that Plaintiff was required to attend an orthopedic consultative examination to determine the degree of the limitation, if any, that Plaintiff had as far as use of her hands. (R. 17.) The case was adjourned so Plaintiff could attend the consultative examination, and Plaintiff appeared for a hearing before the ALJ on March 21, 2012. (R. 85-98.) In a partially favorable written opinion dated July 24, 2012, the ALJ determined that Plaintiff was not disabled from August 5, 2007 to August 4, 2012, but that she would become disabled on August 5, 2012, twelve days after the date of the opinion. (R. 15-27.)[2] The Plaintiff appealed the ALJ's

---

[2] The ALJ found that, beginning on August 5, 2012, because Plaintiff's age category

decision on September 7, 2012. (R. 10-11.) The Appeals Council denied review on August 22, 2013, rendering the ALJ's decision the final judgment of the Commissioner. (R. 1-3.) Plaintiff timely filed this action.

### B.  Personal and Employment Background

Plaintiff was 45 years old at the onset of her alleged disability. (R. 99.) Plaintiff lives with her husband who is on permanent disability. (R. 64-65.) She has six grown children. (R. 65.) Plaintiff attended school in the United States through the eighth grade before moving to Yugoslavia. (R. 56, 75, 99, 287.) She is capable of doing some reading and writing in English. (R. 75.) Plaintiff worked as a stock clerk and cashier for Sears Essential and Kmart from January 2, 2001 until August 5, 2007. (R. 268.) Prior to that, she worked as a cashier at Bradley's for ten years. (R. 47, 65.)

A vocational expert ("VE") at Plaintiff's hearing before the ALJ characterized Plaintiff's past fifteen years of work as a cashier as light and unskilled. (R. 77, 94.) However, the VE noted that given her additional duties working as a stock clerk, it could have risen to the level of medium and semi-skilled. (Id.)

### C.  Medical Background

Plaintiff stopped working on August 5, 2007 due to constant pain in her back, leg and hands. (R. 66.) She alleged disability based primarily upon a disorder of the back and carpal tunnel syndrome in her right hand. (R. 31.)

Plaintiff's back and neck pain are the result of a November 2005 motor vehicle accident.

---

would shift to that of an "individual closely approaching advanced age," Plaintiff's age, education, work experience and residual functional capacity would render her disabled by virtue of Medical-Vocational Rule 210.10. (R. 27.)

(R. 345.)  In July 2007, Plaintiff began treatment with Dr. Arash Emami, whose treatment notes indicate that Plaintiff was suffering from an acute onset of severe radiculopathy and pain in her right leg. (R. 353.) Dr. Emami noted that anti-inflammatories had helped Plaintiff to some degree, but that her recurring pain had made it difficult for Plaintiff to sit, stand and walk.  (Id.) Additionally, Dr. Emami noted Plaintiff's antalgic gait and difficulty with heel walking and toe walking. (R. 354.) An October 2007 MRI of Plaintiff's lumbar spine showed: mild edema at L5; disc bulge with an asymmetric left and right sided component at L5-S1; disc bulge with an asymmetric right sided component at L4-L5; left foraminal herniation at L3-L4; and a small central herniation at L2-L3. (R. 344.)

Neurologist Dr. Eyad Nayal first evaluated Plaintiff in December 2007.  (R. 389-391.) A physical examination of Plaintiff's cervical spine showed that there was some tenderness, but no deficit in range of motion. (R. 390.) A neurological examination revealed there was a decreased pinprick over the right C6, L5-S1, and also over the median nerve dermatomal distribution. (Id.) Additionally, the neurological examination showed straight leg raising was positive on the right at 70 degrees. (Id.) There was also an area of lumbar tenderness on the right from L4-S1, although there was no limitation on range of motion. (Id.) In February 2008, Dr. Nayal concluded that a nerve conduction velocity/electromyogram ("NCV/EMG") of Plaintiff's upper extremities revealed right C6 cervical radiculopathy and carpal tunnel syndrome of moderate to severe degree in her right wrist, and mild degree in her left wrist. (R. 378-379.) The NCV/EMG of Plaintiff's lower extremities revealed right L5-S1 lumbosacral radiculopathy. (R. 369.)

On February 27, 2008, Dr. Nayal completed a physical capacity evaluation.  The doctor indicated that due to neck pain, low back pain and carpal tunnel syndrome, Plaintiff was only able

to work a total of two hours per day.  (R. 431.)  Dr. Nayal also noted that Plaintiff could sit intermittently for three hours, stand intermittently for three hours and walk intermittently for one hour.  (Id.)  He further indicated that Plaintiff could not climb or twist, but that she could reach above shoulder level and operate a motor vehicle.  (Id.)  The doctor also found that Plaintiff could occasionally bend, crouch and kneel and continuously balance.  (R. 434.)  Additionally, Dr. Nayal noted that Plaintiff could perform fine finger movements repetitively with both hands, and perform eye/hand movements repetitively with both hands, but could not push/pull repetitively with either hand.  (Id.)  Furthermore, the doctor concluded that Plaintiff could perform handling fifteen to twenty minutes per hour up to two hours a day and fingering thirty minutes per hour up to three hours a day.  (R. 433.)  The doctor also determined that Plaintiff could frequently reach above shoulder level, reach front to side, and lift up to 20 pounds occasionally, and that Plaintiff could operate foot controls with both legs for three to four hours a day.  (R. 433-434.)

On February 28, 2008, state agency physician Dr. A. M. Pirone conducted a physical residual functional capacity assessment.  (R. 359-366.)  Dr. Pirone concluded that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally.  (R. 360.)  Dr. Pirone further found that in an eight hour workday, Plaintiff could stand and/or walk for about six hours and sit for about six hours.  (Id.)  Plaintiff's ability to push and/or pull was found to be unlimited, aside from the weight limits found in her lifting and/or carrying abilities.  (Id.)  As to postural limitations, Dr. Pirone found Plaintiff could frequently climb ramps/stairs and balance and could occasionally climb ladders, ropes or scaffolds, and could stoop, kneel, crouch and crawl.  (R. 361.)

In May 2008, Dr. Nayal indicated that Plaintiff's bilateral carpal tunnel syndrome showed some improvement with the use of wrist splints, and he recommended that Plaintiff continue using

them.  (R. 367-368.)  He noted that Plaintiff had received many epidural injections and nerve blocks for her lumbosacral radiculopathy, with no sustained relief.  (R. 367.)  Plaintiff's straight leg raising was positive on the right at 70 degrees.  (Id.)  Dr. Nayal concluded that in his opinion, Plaintiff had reached her maximum medical improvement for her right C6 radiculopathy.  (R. 368.)

In September 2009, Plaintiff saw Dr. Fereydoon Ghobadi due to continued complaints of numbness and tingling in both hands.  (R. 402.)  Plaintiff reported dropping objects and having difficulty writing.  (Id.)  She also described having to get up in the night to shake her hand in order to get relief.  (Id.)  A physical examination revealed that there was a positive Tinel sign and Phalem test, as well as hypoesthesia over the median nerve distribution.  (Id.)  On November 20, 2009, Plaintiff underwent right carpal tunnel release surgery.  (R. 395-396.)  At a post-operation follow-up appointment on November 23, 2009, Plaintiff reported having no pain, but still having some numbness.  (R. 404.)  On December 15, 2010, Plaintiff underwent left carpal tunnel release surgery.  (R. 419-420.)

Plaintiff also has a history of pain in her left knee, which was treated by Dr. Vincent McInerney.  (R. 397-400, 405, 410-412, 414-418.)  In January 2010, Plaintiff reported intermittent swelling, difficulty with squatting, as well as clicking and snapping of her knee with occasional locking.  (R. 397.)  Dr. McInerney observed that Plaintiff had an effusion with tenderness on the medial joint line with crepitation and terminal knee extension.  (Id.)  However, Dr. McInerney also noted that Plaintiff had a relatively good range of motion and no gross instability.  (Id.)  Conservative measures were recommended.  (Id.)  An MRI indicated a large chondral lesion involving the medial femoral condyle and lateral tibial plateau and a small tear free edge of the lateral meniscus.  (R. 398-400.)

6

Over the course of July 2010, Dr. McInerney injected Plaintiff's left knee three times with OrthoVisc, a knee pain treatment made from a naturally occurring lubricant found in healthy knee joints. (R. 416-418.) He advised her to continue to lose body weight to help with her knee pain long-term. (R. 416.) Plaintiff had arthroscopic knee surgery on her left knee in June 2011. (R. 410-412.) Physical therapy notes from July 27, 2011, indicate that Plaintiff was able to take a few steps without crutches and that she could walk on the treadmill for fifteen minutes with support. (R. 409.)

In April 2010, Dr. McInerney noted that Plaintiff had a positive impingement sign on the left shoulder with crepitation throughout and a limited range of motion of the neck and low back. (R. 406.) Dr. McInerney injected Plaintiff's shoulder with cortisone, and placed her on a Medrol Dosepak to treat her pain. (Id.)

Pursuant to the Appeals Council's directive, Plaintiff underwent a consultative examination with Dr. Justin Fernando on January 25, 2012. (R. 438-442.) Dr. Fernando indicated that Plaintiff's hand and finger dexterity were intact bilaterally, her grip and pinch strength were normal and Tinel's sign was negative. (Id.) He noted her history of bilateral carpal tunnel release surgery, and found that there was no clinical indication of median nerve entrapment at either wrist. (R. 440.) As to the cervical spine, he found a full range of motion in flexion and lateral flexion, but that extension was limited at 50 degrees bilaterally and rotation was limited at 60 degrees bilaterally. (R. 439.) He found that the lumbar spine showed no evidence of any restriction in the range of motion in flexion and extension and in lateral flexion, noting some tenderness in the midline of the lumbosacral spine, but not in the cervical spine. (Id.) Dr. Fernando further noted that there was no clinical indication of disk involvement or nerve root impingement. (R. 440.) In

7

regard to Plaintiff's knee, he indicated that while there could be some mild arthritic changes in her left knee, her gait showed no evidence of any antalgic element and she was able to walk on her heels and toes. (Id.) Dr. Fernando found that the restriction of mobility at the left shoulder was mild and there was no evidence of any tenderness around the left shoulder. (Id.) Furthermore, he found that there was no evidence of muscle atrophy around either shoulder joint or in the muscles in either upper extremity. (Id.)

After reviewing Plaintiff's medical files, Dr. Martin Fechner testified at the March 21, 2012 hearing. (R. 88-93.) Based on his review of the medical records, Dr. Fechner indicated that Plaintiff had a sedentary residual functional capacity ("RFC"), which permitted "two hours standing and walking aggregate, six hours sitting, get up to stretch two to three minutes every hour, no scaffolding or ladders or crawlspaces…occasional bending and crouching." (R. 91.) He further indicated that she had mild limitation of motion problems in her left arm, and as a result, she could occasionally raise her left arm up to ninety degrees, but not above that. (Id.) Lastly, he found that despite having undergone carpal tunnel release surgery in both hands, Plaintiff still experienced symptoms and was restricted to "occasional, fine, repetitive motion, but certainly could do frequent gross [motion]" with both hands. (R. 91-92.)

## III.  LEGAL STANDARDS

### A.  Standard of Review

This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Courts are not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings.  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g).  Nevertheless,

the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

**B.      Determining Disability**

Pursuant to the Social Security Act, to receive DIB, a claimant must satisfy the insured status requirements of 42 U.S.C. § 423(c). In order to be eligible for Benefits, a claimant must show that she is disabled by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in

the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the claimant's physical or mental impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing."  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382a(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is currently engaged in gainful activity.  Sykes, 228 F.3d at 262.  Second, if she is not, the ALJ determines whether the claimant has a severe impairment that limits her ability to work.  Id.  Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  If it is, this results in a presumption of disability.  Id.  If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment.  Id. at 263.  Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work.  Id.  Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform.

Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one, two, and four, and the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 262 n.2.

IV.    **DISCUSSION**

   **A. The ALJ's Decision Is Supported By Substantial Evidence**

   1.    **Steps One and Two**

After reviewing all of the evidence in the record, the ALJ determined that Plaintiff was not disabled from August 5, 2007 to August 4, 2012 and denied her claim for Benefits for that period. (R. 17, 27.) The ALJ arrived at her disability determination by following the required five-step analysis.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability, August 5, 2007. (R. 19.)

At step two, the ALJ determined that since the alleged onset date of disability, Plaintiff had the following severe impairments: a disorder of the back and arthritis of the left knee. (Id.) Plaintiff argues that the ALJ erred at step two by failing to acknowledge impairments to Plaintiff's hands, cervical spine and left shoulder. (Pl. Br. 18; R. 24-25.)

Although the record contains evidence of Plaintiff's diagnoses of and treatment for carpal tunnel syndrome, tenderness in her cervical spine and arthritis of her left shoulder, diagnoses alone are insufficient to establish their severity at step two. Foley v. Comm'r of Soc. Sec., 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") The

11

Plaintiff bears the burden at step two, and as such, Plaintiff was required to show that the condition of her hands, cervical spine and left shoulder significantly limited her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 404.1521(a); see also Ramirez v. Barnhart, 372 F. 3d 546, 551 (3d Cir. 2004).

As to Plaintiff's argument regarding the ALJ's failure to find carpal tunnel syndrome as a severe impairment in her second decision after having listed it as a severe impairment in her first decision, the court finds the ALJ's conclusion is sustainable. The case was remanded by the Appeals Council with instructions that Plaintiff undergo a consultative examination to determine the degree of limitation, if any, that Plaintiff had as far as use of her hands. (R. 17, 106-110.) The January 2012 consultative examination showed that: there was no clinical indication of median nerve entrapment at either wrist; hand and finger dexterity were intact bilaterally; grip and pinch strength were normal; and Tinel's sign was negative. (R. 439-440.) Prior to the 2012 consultative examination, although Plaintiff had been diagnosed with bilateral carpal tunnel syndrome in February 2008 (R. 378-379), treatment notes indicate that wearing wrist splints somewhat improved her condition. (R. 367.) The treatment notes further indicate that twelve days after her November 2009 right carpal tunnel release surgery, Plaintiff reported no pain, just some numbness. (R. 23, 395-396, 404.)   Plaintiff underwent the same surgery on her left hand in 2010.  (R. 23, 419-420.) The ALJ properly found that Plaintiff had severe impairments, namely a disorder of the back and arthritis of the left knee, and continued the sequential analysis. (R. 19-21); See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir.2005)).  Additionally, as Defendant points out, Plaintiff acknowledges that the ALJ accounted for the limitations in Plaintiff's use of her hands in the RFC analysis. (Def.

Br. 8 (citing Pl. Br. 12, n.2)); see also 20 C.F.R. §404.1545(a)(2) (stating that the Commissioner will consider all of the claimant's medically determinable impairments in assessing their RFC, including those that are not severe).

### 2. Step Three

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled the requirements of any disability contained in the Listings. (R. 21.) The ALJ noted that particular scrutiny was given to the Plaintiff's impairments in light of Listings sections 1.02 and 1.04. (Id.)

Plaintiff argues that the ALJ erred at step three by failing to combine all severe impairments and compare the joint effect of all impairments against one of the Listings to determine medical equivalence. (Pl. Br. 26-27.) Plaintiff contends that there is no evidence articulated in the step three analysis and that the entirety of the ALJ's finding is based on Dr. Fechner's statement that in his opinion Plaintiff's impairment did not singly or in combination meet or equal the Listings. (Id.)

To be disabling, an impairment must meet all the criteria of a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1996). The ALJ found that "[n]o treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment." (R. 21.) She further found that the evidence did not show signs or findings that were the same or equivalent to those of any listed impairment, particularly Listings sections 1.02, for major dysfunction of a joint and 1.04, for disorders of the spine. (Id.) Moreover, the ALJ noted Dr. Fechner's testimony that the severity of Plaintiff's impairments did not meet or equal the Listings, either singly or in combination. (R. 21, 91.)

13

In Jones v. Barnhart, the Third Circuit found that the ALJ was not required "to use particular language or adhere to a particular format in conducting [her] analysis." 364 F. 3d 501, 505 (3d Cir. 2004). The reviewing court must look at the ALJ's decision, as a whole, to determine whether the ALJ "considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing." (Id.) The court's review of the ALJ's decision, in its entirety, leads to the conclusion that the ALJ considered all of the relevant evidence in deciding whether Plaintiff's impairments met or equaled the severity of one of the Listings. Additionally, as the Defendant notes, Plaintiff fails to identify which listing she purports to have met, and does not actually allege that she met a listing. (See Def. Br. 12.) Plaintiff also fails to "point to any medical evidence ignored by the ALJ that would show that [her] impairments medically equaled one of the listings." Cosby v. Comm'r of Soc. Sec., 231 F. App'x 140, 146 (3d Cir. 2007).

The ALJ's determination that Plaintiff did not meet or equal one of the Listings is supported by substantial evidence, specifically Plaintiff's medical records (R. 19-21), and Dr. Fechner's testimony.

**3.    The ALJ's RFC Determination**

Before step four, the ALJ determined that since August 5, 2007, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). Specifically, she found Plaintiff could:

> lift/carry 10 pounds occasionally and 5 pounds frequently; stand/walk for 2 hours in an eight hour work day; sit for 6 hours in an eight hour work day (if given the opportunity at the 45 minute – 1 hour mark to stand and stretch for 3-5 minutes); perform no operation or foot controls with the right foot; and perform unlimited pushing and pulling within the weight restriction given. (R. 21.)

The ALJ further qualified the limitations and found Plaintiff could perform jobs:

14

that require no use of ladders, ropes, or scaffolds; that require only occasional use of ramps or stairs; that require frequent balancing, but only occasional stooping, kneeling, crouching and/or crawling; that require no exposure to unprotected heights, hazards or dangerous machinery; that involve frequent gross manipulation with both hands but only occasional fine manipulation with both hands; and that require no lifting of the left arm to greater than 90 degrees and require only occasional lifting of the left arm to 90 degrees. (Id.)

Plaintiff argues that the ALJ's RFC analysis was inappropriate in two ways. First, Plaintiff argues that the RFC is not supported by substantial evidence. (Pl. Br. 29-30.) Second, Plaintiff argues that the ALJ erred by failing to give serious consideration to Plaintiff's subjective complaints of pain. (Pl. Br. 30-33.)

As to the first argument, the Court finds the RFC determination is supported by substantial evidence. Plaintiff argues that the RFC was improperly based exclusively on Dr. Fechner's orthopedic opinion, and that such an adoption is unwarranted given the doctor's level of expertise, his ignorance of the record and the ALJ's failure to mention other supporting evidence. (Pl. Br. 29-30.) Although Dr. Fechner never physically examined Plaintiff, he considered all of the relevant medical evidence and relied upon his own training and experience when conducting his evaluation. (R. 89-93.) In granting Dr. Fechner's opinion substantial weight, the ALJ did not simultaneously reject Plaintiff's treating physicians' opinions. The ALJ found that the RFC was supported by medical evidence, the opinions of medical expert Dr. Fechner, and the opinions of treating physicians Dr. Emami and Dr. Nayal for the time periods during which they were issued. (R. 25.) As Defendant points out, Dr. Fechner's RFC determination was more restrictive than other examiners' opinions regarding Plaintiff's capabilities, including that of the state agency consultant whose February 2008 assessment indicated Plaintiff was capable of work at the light exertional level. (Def. Br. 14; see also R. 24, 359-366.)

Additionally, the ALJ explained her reasoning for giving less weight to any portion of the

15

treating physicians' opinions. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ indicated that she gave great weight to Dr. Emami's opinion that Plaintiff had: (1) no limitations in lifting/carrying, standing/walking, sitting or pushing/pulling; (2) 5/5 muscle strength in her lumbar spine and; (3) only minimal limitation in range of motion. (R. 24, 347-353.) However, the ALJ noted that since the opinion was issued in 2007, no weight could be accorded to it after that time. (R. 24.) Additionally, the ALJ found that Dr. Nayal's findings from his February 2008 physical capacity assessment were consistent with the RFC determination limiting Plaintiff to sedentary work with occasional postural limitations and a complete restriction on climbing ladders, ropes or scaffolds. (R. 24-25, 431-435.) The ALJ noted that she was discrediting Dr. Nayal's finding that Plaintiff could only work for two hours per day to the extent the doctor was saying Plaintiff was limited to two hours of work because of pain. (R. 25, 431-435.) The ALJ found that this finding conflicted with Dr. Nayal's other findings from the same report, namely that Plaintiff could sit for three hours, stand for three hours and walk for one hour. (Id.) The ALJ also found that the record overall did not support this finding. (Id.) The Court therefore finds that the ALJ's RFC determination was supported by substantial evidence.

As to Plaintiff's second argument, the Court finds that the ALJ properly considered Plaintiff's symptoms. The ALJ found that though Plaintiff alleged "total disability" since August 5, 2007, the objective findings failed to reveal such debilitating limitations. (R. 22.) The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment. (Id.) The ALJ found that the objective medical

16

findings revealed some limitations, but not to the extent alleged by Plaintiff. (Id.)

The relevant treatment and consultative examination notes for Plaintiff's back disorder, knee arthritis and carpal tunnel syndrome cited by the ALJ (R. 22-23), support the ALJ's finding that Plaintiff was not as disabled as she claimed. Particularly, as to Plaintiff's back, the ALJ noted that medical records from July 2007 indicate that Plaintiff's cervical spine had a full range of motion in flexion, extension and lateral flexion. (R. 22, 353-354.) In October 2007, she was found to have normal gait and her motor examination was 5/5. (R. 22, 345-346.) In May 2008, Plaintiff was found to have no weakness, no bowel or bladder dysfunction. (R. 22, 367.) Additionally, the ALJ cited Dr. Fernando's notes from the January 2012 examination and Dr. Fechner's testimony in which he discussed the findings of this examination. (R. 23, 89, 438-442.) During the exam, Plaintiff was found to have normal gait and was able to walk on her heels and toes. (R. 23, 89.) While she had some tenderness of the lumbar spine, she had a good range of motion and did not use a cane. (Id.)

As to Plaintiff's knee, the ALJ referenced January 2010 treatment notes which indicated Plaintiff had relatively good range of motion of the left knee and no gross instability. (R. 22, 397.) The ALJ also cited records from one month after Plaintiff's 2011 knee surgery, which indicated that Plaintiff could walk without crutches, could walk on the treadmill for fifteen minutes with support and that she showed potential to achieve terminal knee extension. (R. 22-23, 409.) In addition, the ALJ discussed the January 2012 consultative examination findings that Plaintiff had normal gait, no muscle atrophy, did not require an assistive device to walk, and could walk on her heels and toes without difficulty. (R. 23, 438-440.)

The ALJ also cited Dr. Fechner's testimony regarding Plaintiff's medical history with her

17

left shoulder and hands.  As to the left shoulder, the ALJ noted that Dr. Fechner testified that in June 2010 Plaintiff received a cortisone injection in her shoulder due to crepitus and impingement (R. 23, 90, 406), and that in January 2012, the consultative examiner found mild limitation of motion in Plaintiff's left shoulder.  (R. 23, 90, 438-440.)  The ALJ also cited to Dr. Fechner's testimony regarding Plaintiff's carpal tunnel release surgeries in 2009 and 2010, and post-operative notes from the 2009 surgery which indicated that twelve days post-surgery Plaintiff was experiencing no pain, but some numbness.  (R. 23, 90, 404.)  In addition, the ALJ discussed Dr. Fechner's summary of the 2012 consultative exam findings that Plaintiff's hand and finger dexterity were intact, she had normal grip and pinch strength and a negative Tinel's sign.  (R. 23, 90-91, 438-440.)

The ALJ's finding that Plaintiff's alleged "total disability" was not credible to the extent it was inconsistent with the residual functional capacity assessment was supported by substantial evidence in the record.  The ALJ properly accounted for the limitations that she found were supported by the record by finding Plaintiff's ability to work at the sedentary level was impeded by additional limitations.

4.     **Steps Four and Five**

At step four, the ALJ determined that given Plaintiff's RFC, she would be unable to perform her past relevant work as cashier/stock clerk because of the exertional level it required. (R. 25.)

At step five, the ALJ considered Plaintiff's RFC, age, education, and work experience in determining whether Plaintiff was able to do other work.  (R. 25-27.)  The Vocational Expert ("VE"), Rocco Meola testified that given Plaintiff's age, educational background, work history

18

and RFC, such an individual would be able to perform the requirements of representative occupations such as hand mounter, carding machine operator, and preparer. (R. 26.) He further testified that there were approximately 800 of these jobs available in the regional economy and approximately 20,000 in the national economy. (R. 26.) Also at step five, the ALJ noted that under the Regulations, prior to August 5, 2012, Plaintiff was considered a "younger individual" (within age range 45-49.) (R. 25.) The ALJ further noted that on August 5, 2012, Plaintiff's 50th birthday, her age category would change to that of an "individual closely approaching advanced age." (Id.) Fully crediting Mr. Meola's testimony, the ALJ determined that Plaintiff was capable of making a successful work adjustment to other work that existed in significant numbers in the national economy, and therefore was not disabled, prior to August 5, 2012. (R. 26-27.) However, the ALJ determined that beginning on August 5, 2012, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience and RFC, there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. (R. 27.) Therefore, Plaintiff was found to have become disabled on August 5, 2012, twelve days after the date of the decision. (Id.)

Plaintiff argues that the ALJ's adoption of Dr. Fechner's RFC led her to pose hypothetical questions about the jobs Plaintiff could perform which ignored certain restrictions in gross manipulation, neck movement, reaching or pain, and therefore, that the jobs the VE recited do not support the Commissioner's burden of proof at step five. (Pl. Br. 33-35.) "A hypothetical question must reflect all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)). If an ALJ poses a hypothetical to a VE that "fairly set[s] forth every credible limitation

[of the claimant] established by the physical evidence," the VE's testimony as to the jobs such a person could perform is by itself substantial evidence to carry the government's burden at step five. Plummer, 186 F.3d at 431-32. As noted above, in fashioning the RFC, the ALJ accounted for all of Plaintiff's impairments that were supported by the record. The hypothetical posed to the VE accurately conveyed the limitations of the RFC and the additional limitations that the ALJ found Plaintiff had due to the condition of her hands and shoulder. (R. 21, 94-95.) As a result, the Court concludes that the testimony of the vocational expert provides substantial evidence to support the ALJ's findings.

Additionally, Plaintiff argues that the ALJ erred at step five in her mechanical application of the age factor. (Pl. Br. 36-37.) The Commissioner's regulations provide that age categories will not be applied mechanically in borderline situations where a claimant is within a few days to a few months of an age category that would result in a finding of disability. 20 C.F.R. § 404.1563(b).

Here, the ALJ determined that Plaintiff's 50th birthday was twelve days from the date of the decision, and at that time Plaintiff would enter the age category of an "individual closely approaching advanced age." (R. 25.) Therefore, the ALJ did find that Plaintiff was disabled, as of August 5, 2012, Plaintiff's 50th birthday. (R. 27.) In light of the ALJ's finding that Plaintiff was disabled because of her entry into the new age category, the Court agrees with Defendant's position that "[i]t is not entirely clear what aspect of this finding Plaintiff is protesting," (Def. Br.

16.)  What is clear, however, is that Plaintiff was advantaged by the ALJ's consideration of her upcoming age change.

## V.   **CONCLUSION**

For the foregoing reasons, the ALJ's decision is hereby affirmed.  An appropriate order accompanies this Opinion.


DATED: December 19, 2014

CLAIRE C. CECCHI, U.S.D.J.